UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| LARRY BENTLEY, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 17-01102-JES |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## ORDER AND OPINION

Now before the Court is Petitioner Bentley's Motion [1] to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. The entirety of Mr. Bentley's motion is based on claims of ineffective assistance of counsel, both during trial and on appeal. Mr. Bentley wanted a lawyer to fight for him, who would not be collegial with the government. He got that lawyer in Mr. Brindley.

Mr. Brindley is the first to admit that he wishes he had informed Mr. Bentley of the contempt order imposed by Judge McCuskey, but there is nothing to indicate that even if this were to be considered a conflict, Mr. Bentley was adversely affected or that it adversely affected Brindley's performance. Brindley was a zealous advocate for Mr. Bentley, raising all issues before the trial court that should have been raised. Mr. Brindley also raised all meritorious issues on appeal, with one exception (prolongation of the stop), which he regrets in hindsight. Certainly in the trial court, there is no evidence that the contempt order caused Brindley to do anything he should not have done. In the court of appeals, his explanation supports the same finding.

Mr. Bentley is a smart man. He hired and fired three lawyers. He was clear what he wanted in a lawyer. He was clearly engaged in the direction of his case. He decided to go to trial,

he decided against cooperating, and he decided not to testify—all rights that he possessed. He was convicted because of overwhelming evidence against him, and he ended up with the mandatory minimum of 240 months as a result.

To prevail on the conflict of interest claim now, he would have to show that the conflict adversely affected his attorney's performance. However, Mr. Bentley's § 2255 motion and reply do not point to any incident that shows Mr. Brindley's failure to tell him about the conflict caused any adverse action on his attorney's part. The Court finds that he cannot point to such an incident because there were no such incidents.

For the reasons set forth below, Petitioner's Motion [1] is DENIED and the Court declines to issue a Certificate of Appealability.

## BACKGROUND[1]

On October 14, 2010, a police officer ran a license check on a vehicle he observed at a Circle K convenience store. The registered owner's name was Tonya Smith, and her driver's license had expired in 1992. The officer followed the vehicle onto the interstate and observed the vehicle drift over the fog line more than once. He pulled the vehicle over, and found Petitioner alone in the driver's seat. Another officer arrived, saw a spare tire in the backseat, and suggested that they call a drug-detection dog to smell the exterior of the car. Petitioner agreed to step out of the car, and consented to a search of his person that produced more than $1,000 in cash, $6,500 in money orders, and a cell phone. The dog alerted to drugs, and the officers searched the car, turning up 15 packages containing 14.9 kilograms of cocaine. R. 117, pp. 39–42, 47, 51, 103–104; R. 118, pp. 185, 252.

---

[1] Citations to documents filed in this case are styled as "Doc. __." Citations to the record in the underlying criminal case are styled as "R.__."

On October 19, 2010, a grand jury indicted Petitioner for knowingly possessing more than five kilograms of a mixture and substance containing cocaine, with the intent to distribute. R. 9. Petitioner changed privately-retained attorneys on October 20, 2010; January 10, 2011; July 25, 2011; and finally to the counsel in question on March 30, 2012. At that time, according to Petitioner, the Court indicated that it would not allow Attorney Brindley to withdraw from the case, and that it would not allow Petitioner to terminate counsel. Doc. 2, pp. 101–03. Mr. Brindley represented Petitioner during pretrial evidence suppression hearings in April 2012 and October 2012, through Petitioner's March 2013 trial, and during Petitioner's proceeding direct appeal.

In March 2013, the jury found Petitioner guilty of Possession of More than Five Kilograms of a Mixture and Substance Containing Cocaine, under 21 U.S.C. § 841(b)(1)(A). Doc. 3. On September 3, 2013, this Court sentenced Petitioner to 240 months in prison, which was the statutory minimum, followed by 10 years of supervised release. *Id.* Petitioner appealed, and the Seventh Circuit upheld his conviction. *United States v. Bentley*, 795 F.3d 630 (7th Cir. 2015). The Supreme Court denied Petitioner's petition for a writ of *certiorari* on February 29, 2016. *Bentley v. United States*, 136 S.Ct. 1233 (2016). Petitioner's § 2255 motion was filed in a timely manner, post-marked February 2, 2017. Doc. 1, p. 15. Petitioner's claims are based on ineffective assistance of counsel. He alleges that he received ineffective assistance from his attorney, Mr. Brindley, prior to trial, during trial, and on appeal. Petitioner asserts eighteen grounds in his motion relating to ineffective assistance. These include, among others, assertions that his attorney failed to make certain arguments at pretrial hearings and at trial, and that his attorney failed to disclose an alleged conflict of interest. Doc. 2. On September 20, 2018, this Court held an evidentiary hearing limited to the conflict of interest issue. At that hearing,

Petitioner was represented by Mr. Lee Smith, who conducted a cross-examination of Mr. Brindley and a direct examination of Petitioner, and diligently argued on Petitioner's behalf.

**LEGAL STANDARD**

A petitioner may avail himself of § 2255 relief only if he can show that there are "flaws in the conviction or sentence which are jurisdictional in nature, constitutional in magnitude or result in a complete miscarriage of justice." *Boyer v. United States*, 55 F.2d 296, 298 (7th Cir. 1995), *cert. denied*, 116 S. Ct. 268 (1995). Section 2255 is limited to correcting errors that "vitiate the sentencing court's jurisdiction or are otherwise of constitutional magnitude." *Guinan v. United States*, 6 F.3d 468, 470 (7th Cir. 1993), citing *Scott v. United States*, 997 F.2d 340 (7th Cir. 1993).

Federal prisoners may not use § 2255 as a vehicle to circumvent decisions made by the appellate court in a direct appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982); *Doe*, 51 F.3d at 698. Accordingly, a petitioner bringing a § 2255 motion is barred from raising issues raised on direct appeal, absent some showing of new evidence or changed circumstances. *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992), *overruled on other grounds by Castellanos v. United States*, 26 F.3d 717, 710–20 (7th Cir. 1994).

Criminal defendants are guaranteed the right to effective assistance of counsel under the Sixth Amendment. *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009). The seminal case on ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Court stated that in order for a prisoner to demonstrate that counsel's performance did not meet the constitutional standard, the petitioner would have to show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88; *Wyatt v. United States*, 574 F.3d 455, 458–59 (7th Cir. 2009). Courts must "indulge a strong presumption that counsel's

conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 690.

A prisoner must also prove that he has been prejudiced by his counsel's representation by showing "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Absent a sufficient showing of both cause and prejudice, a petitioner's claim must fail. *United States v. Delgado*, 936 F.2d 303, 311 (7th Cir. 1991). Thus, the Court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

Where a claim of ineffective assistance of counsel is based on a conflict of interest, there are two legal frameworks to apply. If there is an actual conflict, courts apply *Cuyler v. Sullivan* and assume prejudice if there was any adverse effect on the attorney's performance. *Freeman v. Chandler*, 645 F.3d 863, 869 (7th Cir. 2011); *Cuyler v. Sullivan*, 446 U.S. 335 (1980). If there is only a potential conflict, courts apply the two-prong cause and prejudice test from *Strickland*. *Freeman*, 645 F.3d at 869; *Strickland*, 466 U.S. 668.

## Discussion

*1. Effectiveness Before Trial*

*A. Failure to Object on Choice of Counsel Issue*

Petitioner claims that counsel was ineffective for failing to object to an alleged "edict" from the Court that Petitioner would not be allowed to change counsel again. Doc. 2, pp. 101–103. Petitioner suggests that this amounted to a denial of his right to retain counsel of his choice, a structural error that would be reviewed without inquiry into prejudice. Doc. 2, p. 101 (citing

5

*United States v. Velazquez*, 772 F.3d 788 (7th Cir. 2014) (upholding the denial of a motion to withdraw, stating that the outcome was the same whether structural error analysis or ineffective assistance analysis applied)). However, after the time Mr. Brindley began representing Petitioner, no motion was ever made to withdraw or substitute counsel. On October 10, 2014, when Petitioner was informed that Mr. Brindley had been indicted in a separate criminal matter, and Petitioner was given the opportunity to change counsel, Petitioner waived any conflict and indicated his preference for Mr. Brindley to remain his counsel. "Deprivation of [the right to be assisted by counsel of one's choice] is 'complete' when the defendant is erroneously prevented from being represented by the lawyer he wants." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006). Petitioner was clearly not deprived of this right, as he never indicated that he wanted a different lawyer, and he affirmatively indicated that he preferred to continue retaining Mr. Brindley in the wake of Mr. Brindley's criminal charges.

Even if Petitioner had so indicated, courts do not err by denying changes in counsel where they have balanced the right to choice of counsel against "the needs of fairness to the litigants and against the demands of its calendar." *Velazquez*, 772 F.3d at 798; see also *United States v. Carrera*, 259 F.3d 818, 824–25 (7th Cir. 2001) ("[T]his right is not absolute, but qualified, and must be balanced against the requirements of the fair and proper administration of justice."). Petitioner had been represented by numerous different lawyers in his criminal case before he retained Mr. Brindley, suggesting that even if he had desired to change counsel again, any denial would have been in the interest of the proper and timely administration of justice. Thus, Petitioner's claim that his counsel was ineffective for failing to object to the alleged denial of his right to counsel is without merit.

### B. Performance at Suppression Hearings

Petitioner makes nine separate claims about ways in which he alleges that Mr. Brindley was ineffective at the suppression hearings before trial. Specifically, Petitioner claims that Mr. Brindley was ineffective because he failed to argue: 1. that drug-sniffing dogs perform a "search" under the Fourth Amendment and are covered by *Kyllo v. United States*, 533 U.S. 27 (2001); 2. that the agency for the drug-sniffing dogs did not meet registration requirements; 3. that the specific dog that sniffed Petitioner's car was medically unfit for duty; 4. that an officer had contaminated the vehicle by touching it without gloves before the dog sniff; 5. that the dog was less than 59% accurate in the field; 6. that due process requires objective behavioral indicators by all drug-sniffing dogs; 7. that the Bloomington Police Department did not have a policy on canine team proficiencies; 8. that because an officer likely saw Petitioner enter the vehicle, there was no basis for reasonable suspicion that the car was being driven by an unlicensed driver; and 9. that Illinois traffic law regarding vehicle placement within a lane did not supply sufficient grounds for officers to pull Petitioner over. Doc. 2.

These nine ineffective assistance of counsel claims are properly evaluated under the *Strickland* standard, meaning the Court may resolve the claim based on lack of sufficient prejudice without addressing deficiency of performance. *Strickland*, 466 U.S. at 697. Mr. Brindley did in fact argue many of these issues (numbers 3, 5, and 9 above), and Petitioner has failed to show that he had a reasonable likelihood of success on the remainder, nor a reasonable probability that they would have changed the outcome of the proceedings.[2] Several of the arguments Petitioner claims his counsel was ineffective for failing to raise—the assertions that

---

[2] Mr. Brindley argued at the suppression hearing that the drug-sniffing dog was unreliable for various reasons including false positives (e.g., R. 122, pp. 167–72) and a 15.63% field accuracy rate (R. 123, pp. 459–60), and Mr. Brindley did raise the Illinois traffic law issue on appeal, where it was rejected (*Brindley*, 795 F.3d at 633–34).

7

the Fifth Amendment requires uniform response behaviors in all drug-sniffing dogs across the country and uniform canine proficiency tests, and that a dog sniffing the exterior of a car during a lawful traffic stop violates the Fourth Amendment—have no basis in law. See *Illinois v. Caballes*, 543 U.S. 405, 410 (2005). The argument that the dog alerted to a contaminated touch from an officer, rather than to the 14.9 kilograms of cocaine in the vehicle, strains credulity. The argument regarding lack of reasonable suspicion at the gas station would not have affected the proceeding at all, even if successful, because the officer had separate cause to stop Petitioner based on his erratic driving on the road after leaving the gas station. See *Bentley*, 795 F.3d at 634. After ruling out the claims Mr. Brindley actually did make (3, 5, and 9 above) and the claims without basis in law (1, 6, and 7 above), the remaining claims of ineffective assistance before trial (2, 4, and 8) would not have been successful nor affected the outcome at trial. See *Strickland*, 466 U.S. at 697.

    *2. Effectiveness at Trial*

    Petitioner makes three claims regarding Mr. Brindley's performance during trial. First, he claims counsel was ineffective for failing to raise arguments about the reasons for his traffic violation, suggesting that his crossing the fog line was not a traffic violation in the specific situation where another car was attempting to pass him. Second, he claims counsel was ineffective for failing to refute the locations of his personal documents within the car. Third, he claims counsel was ineffective for stipulating to the location of an unknown fingerprint above the compartment of the car containing drugs.

    Mr. Brindley raised the traffic violation issue on appeal, on Petitioner's behalf. The Seventh Circuit ruled that "the other car was not moving in such a way that would suggest Bentley was driving in adverse conditions and was unable to stay in his lane," and the argument

failed. *Bentley*, 795 F.3d at 634. Federal prisoners may not use § 2255 as a vehicle to circumvent decisions made by the appellate court in a direct appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982); *Doe*, 51 F.3d at 698. Since this issue has already been raised and rejected on appeal, it is an improper ground for a § 2255 motion. Even if it were proper, Petitioner clearly suffered no prejudice from Mr. Brindley's alleged failure to raise the issue at trial, since it would ultimately have been rejected. See *Strickland*, 466 U.S. at 697.

Examining Petitioner's other two claims for prejudice, they are insufficient to warrant success on the motion. Petitioner claims that the jury would not have considered him the owner of the car if Mr. Brindley had entered into evidence a photograph of the backseat of the car, depicting it without any of the documents that were used to show Petitioner's ownership. Doc. 2, pp. 95–97. However, that photograph was presented to the jury, and it was taken after the documents had been removed from the car. R. 117, p. 150. In fact, in his closing argument, Mr. Brindley pointed to the officers' failure to photograph the locations of the documents within the car as a hole in the government's case. R. 119, p. 472. ("They don't keep a record of which documents are where. They don't take a picture to show, Hey, this is where the documents were.") Thus, Petitioner cannot show that there would have been a reasonable likelihood of success if Mr. Brindley had argued the photograph showed his documents had not been strewn in the back of the vehicle; the timing of the photograph could not have supported that argument, and Petitioner was not prejudiced by counsel's failure to raise it. See *Strickland*, 466 U.S. at 697.

Petitioner also contends that Mr. Brindley was ineffective because he did not contest the government's position that an unknown latent print was found "above" the compartment containing drugs. Doc. 2, pp. 99–100. Petitioner claims that the print being located "inside" the compartment would have given the jury reasonable doubt about whether the drugs or the car

9

belonged to some third person, rather than Petitioner. According to Petitioner, the print was on a part of the molding below the lid of the compartment, placing it "inside" the compartment rather than "above" the compartment. This distinction is pedantic at best. Even inside the lid, the print was above the compartment, as the lid was above the compartment. Mr. Brindley repeatedly argued at trial that the presence of the print, which was not a match for Petitioner nor for any of the officers at the scene, established a credible possibility that someone else put the drugs in the car without Petitioner's or the owner's knowledge. See, e.g., R. 117, p. 141; R. 119, pp. 508–09. As such, there is not a reasonable probability that the outcome of the trial would have been different if Mr. Brindley had referred to the location of the print as "inside" rather than "above" the compartment in the stipulations. See *Strickland*, 466 U.S. at 697. For these reasons, Petitioner's arguments that he received ineffective assistance of counsel at trial fail.

*3. Effectiveness on Appeal*

Petitioner's only potentially meritorious argument regarding counsel's effectiveness on appeal is that Mr. Brindley waived Petitioner's prolongation argument. That is, Mr. Brindley did not include in his opening appellate brief an argument that the officers unlawfully prolonged the stop by waiting for a drug-sniffing dog after the citation was complete.

When a client directs his lawyer to appeal and the lawyer simply does not, the client has been deprived of any assistance of counsel on appeal, and the failure is a per se violation of the Sixth Amendment. See *Castellanos*, 26 F.3d at 718. However, where counsel does appeal, but omits some arguments the client wishes him to make, that omission is reviewed under *Strickland* for deficient performance and prejudice. See, e.g., *Davila v. Davis*, 137 S. Ct. 2058, 2067 (2017) ("Declining to raise a claim on appeal, therefore, is not deficient performance unless that claim

10

was plainly stronger than those actually presented to the appellate court.") (citing *Smith v. Robbins*, 528 U.S. 259, 288 (2000)).

When Mr. Brindley submitted the opening brief, the existing state of the law in the Seventh Circuit was that, because traffic stops based on probable cause permitted custodial arrests, persons stopped are not entitled to immediate release upon completion of the citation. *United States v. Childs*, 277 F.3d 947, 953 (7th Cir. 2002). This was also the state of the law at the time of the traffic stop in this case. *Rodriguez v. United States*, 135 S. Ct. 1609 (2015), was decided on April 21, 2015, after briefing on the appeal was complete, and months after oral argument. In that case, the Supreme Court held that officers may not conduct unrelated checks during a lawful traffic stop in a manner that prolongs the stop, unless they have reasonable suspicion to detain the person stopped. *Rodriguez*, 135 S. Ct. at 1615. Regardless of whether the officers in this case prolonged the stop or had reasonable suspicion to do so, they were operating at the time under a state of the law that authorized prolongation of a traffic stop for a canine check. See *United States v. Carpenter*, 406 F.3d 915, 916–17 (7th Cir. 2005) (upholding a short delay for a dog's arrival during a lawful traffic stop) (citing *Whren v. United States*, 517 U.S. 806 (1996)).

In general, the Sixth Amendment does not require counsel to "forecast changes or advances in the law." *Lilly v. Gilmore*, 988 F.2d 783, 786 (7th Cir. 1993). Even if it did in this case, counsel's failure to anticipate *Rodriguez* did not prejudice Petitioner because the argument would have been unsuccessful on appeal—in Petitioner's case, the officers acted in good faith under the structure of then-binding Circuit precedent. See *Davis v. United States*, 564 U.S. 229, 239–41 (2011) ("[W]e have 'never applied' the exclusionary rule to suppress evidence obtained as a result of nonculpable, innocent police conduct. … [W]hen binding appellate precedent

specifically authorizes a particular police practice, well-trained officers will and should use that tool to fulfill their crime-detection and public-safety responsibilities.") (quoting *Herring v. United States*, 555 U.S. 135, 144 (2009)). Petitioner cannot show prejudice even if his assertions were accepted. For the same reason, he cannot show deficient performance by Mr. Brindley; the fact that the good-faith exception to the exclusionary rule would have applied meant that the claim was not "plainly stronger" than the arguments Mr. Brindley did present. *Davila*, 137 S.Ct. at 2067. Thus, on either prong of *Strickland*, the claim for ineffective assistance of counsel during Petitioner's appeal also fails.

*4. Alleged Conflict of Interest*

Petitioner claims that he received ineffective assistance of counsel because his lawyer, Mr. Brindley, never disclosed to him that Mr. Brindley was the subject of a contempt proceeding in an unrelated case. According to Petitioner, the conflict of interest arose because Mr. Brindley faced potential punitive action from the same office prosecuting Petitioner. Doc. 2, p. 104. On September 20, 2018, this Court held a hearing on this claim. Neither in the pleadings nor during his testimony at that hearing could Petitioner point to any effect that the alleged conflict of interest had on *Mr. Brindley's* performance. Rather, Petitioner's position is that Petitioner himself would have preferred to change attorneys if he had known that Judge McCuskey believed Mr. Brindley to be dishonest. For the reasons below, this is insufficient for Petitioner to prevail on the conflict of interest claim.

There are two analytical frameworks that could apply to this situation, but the claim fails under either one. Mr. Brindley was held in contempt by Judge McCuskey in a separate case and immediately appealed that ruling. *United States v. Britton*, No. 10-CR-20090 (C.D. Ill. 2012). The Seventh Circuit vacated the contempt ruling, remanding it to Judge Myerscough. *United*

*States v. Britton*, No. 12-3711 (7th Cir. 2013). On February 26, 2014, Judge Myerscough chose not to pursue further contempt proceedings, which she communicated through a text order. *Britton*, No. 10-CR-20090. The matter was therefore never referred to a U.S. Attorney's Office for investigation or prosecution. See Fed. R. Crim. P. 42(a)(2). As such, Mr. Brindley was never actually the subject of a U.S. Attorney investigation, and any conflict of interest remained only "potential." Petitioner himself referred to the alleged conflict as such. See Doc. 2, p. 104 ("Thus, prior to the trial in this case, there existed a potential conflict of interest between Petitioner and Counsel.").

Where a petitioner alleges that he was denied effective assistance of counsel due to a potential conflict of interest, courts apply the two-prong cause and prejudice test from *Strickland*. *Freeman,* 645 F.3d at 869. The prejudice prong requires that Petitioner demonstrate a reasonable probability that the outcome of the proceeding would have been different if not for counsel's ineffective assistance. *Strickland*, 466 U.S. at 694. The only effect Petitioner claims the potential conflict of interest had on the proceeding was that Mr. Brindley did not disclose the potential conflict and that Petitioner was not able to change counsel based on that knowledge. Doc. 2, p. 105. For the reasons stated in Sections 1–3 above, any alleged deficiencies in Mr. Brindley's performance at trial or on appeal did not alter the outcome of the proceedings.

Assuming *arguendo* that there was an actual conflict of interest, Petitioner's claim would still fail. Where there is an actual conflict of interest, the Court must assume prejudice if there is an adverse effect on the attorney's performance. *Cuyler,* 446 U.S. at 348. Petitioner did not identify any adverse effect that the alleged conflict had on Mr. Brindley's performance. Other than Mr. Brindley's failure to disclose the conflict, Petitioner does not claim that it had any effect

on his representation. As such, any presumption of prejudice has been rebutted, and his claim of ineffective assistance of counsel based on the alleged conflict of interest fails.

### CERTIFICATE OF APPEALABILITY

To obtain a Certificate of Appealability under § 2253(c), "a habeas prisoner must make a substantial showing of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). This means that the prisoner must show "that reasonable jurists could debate whether … the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Id*. at 484. Here, no reasonable jurist could conclude that Petitioner's counsel was ineffective or that Petitioner was prejudiced by any of counsel's alleged errors, either individually or in combination. Accordingly, the Court declines to issue a Certificate of Appealability.

### CONCLUSION

For the reasons set forth above, Petitioner's Motion [1] is DENIED and the Court declines to issue a Certificate of Appealability. This matter is now terminated.

Signed on this 27th day of September, 2018.

/s James E. Shadid
James E. Shadid
Chief United States District Judge